## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

e2COMPANIES, LLC,

Plaintiff,

v.

CRAIG KURTZHALS,

Defendant.

**CASE NO. _____**

## COMPLAINT

Plaintiff, e2Companies, LLC ("e2"), a Florida limited liability company, by counsel, for its Complaint against Defendant Craig Kurtzhals ("Kurtzhals"), states as follows:

## INTRODUCTION

1.     Kurtzhals is a former Vice President of Engineering for e2.  As set forth below, Kurtzhals engaged in blatant corporate espionage by misappropriating e2's confidential and proprietary trade secrets and providing them to Tecfusions, Inc. ("Tecfusions"), a competitor to e2.  While employed by e2, and for months before he abruptly resigned from e2, Kurtzhals shared e2 confidential information with Tecfusions, participated in the strategic business operations of Tecfusions and participated in the solicitation of e2's employees,

1

contractors and business opportunities in an effort to destroy e2's business for the benefit of Tecfusions. Then, after resigning, he accepted employment with Tecfusions in the same engineering role he had with e2. All this conduct violated the restrictive covenants of the Employment Agreement Kurtzhals had with e2 and forms the basis for the injunctive relief and damages sought in this litigation.

## PARTIES

2.     e2 is a Florida limited liability company with its principal place of business located at 8901 Quality Road, Bonita Springs, Florida 34135.

3.     Kurtzhals is a Pennsylvanian citizen and resident whose address is 818 Statler Road, Chadds Ford, Pennsylvania 19317.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this matter on the basis of diversity pursuant to 28 U.S.C. § 1332 and on the basis of federal question pursuant to 28 U.S.C. § 1331 because the action arises out of the laws of the United States, specifically the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.

5.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the claims in the action within such original jurisdiction of this Court that they form part of the same case or controversy under Article III of the United States Constitution.

2

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

7.      Founded in 2009, e2 is the first vertically integrated Virtual Utility® company for power generation, distribution, and energy economics in the marketplace. e2 provides a complete turnkey business model for Energy, Utilities, Essential Facilities, Data Centers, Hospitals, government sites, industrial and commercial customers.  e2 has customers and projects worldwide.

8.      Over the years, e2 has developed a full range of products and services, including its patented R3Di technology, to complete essential primary and emergency power systems.

**e2's Relationship with Kurtzhals**

9.      On March 18, 2022, e2 hired Kurtzhals as Vice President of Engineering and entered into an Employment Agreement.  A copy of the Employment Agreement is attached as Exhibit A.

10.     The Employment Agreement included an Annex B entitled "Non-Competition and Non-Solicitation Agreement" that provided, in part, as follows:

> 1. Restrictive Covenants. In order to protect, among other things, Company's interests and investments in its trade secrets and proprietary information, its relationship with its customers, clients,

employees and contractors, and its goodwill, Employee agrees to the following covenants and restrictions:

1.1    Non-Competition Agreement. During the term of Employee's employment with Company and, for a period of twelve (12) months following termination of that employment, Employee will not, directly or indirectly, participate in or engage in any business or activity which is in competition with the Business of Company in the Territory (as defined below), whether as an individual on his or her account or as an employee, consultant, contractor, officer, director, shareholder, partner, member, joint venture partner, representative, agent or equity owner of any business entity.

1.2    Non-Solicitation of Customers. During Employee's employment with Company and for a period of twelve (12) months following termination of that employment, Employee will not, directly or indirectly,(a) for any business that is in competition with the Business of Company, solicit the business of any person, firm, corporation, partnership, limited liability company, trust or other business entity which Employee solicited, negotiated,  contracted, serviced or had contact with on the Company's behalf during the one (1) year period prior to the termination of Employee's employment with company, (b) in any other manner persuade or attempt to persuade any such person, firm, corporation, partnership, limited liability Company, trust or other business entity to discontinue or alter its business relationship with company, or (c) otherwise solicit for a competitive purpose or interfere with Company's relationship with any such person, firm, corporation, partnership, limited liability company, trust or other business entity.

1.3  Non-Solicitation of Employees. During the Employee's employment with Company, and for a period of twelve (12) months following termination of that employment, Employee shall not, directly or indirectly, in any manner, (a) solicit, hire, or offer to hire any employee or contractor of Company while that person is employed or engaged by Company and for three (3) months after the termination of that person's employment or engagement with Company, or (b) otherwise encourage or induce any such employee or contractor to discontinue his or her relationship with Company.

4

…

2. <u>Territory</u>. The restrictions contained in this Agreement apply to a fifty (50) mile radius around any and all offices of the Company or offices of Company's customers globally in which Company conducts or engages in the Business (herein the "Territory"). Employee acknowledges that, because Company is engaged in the Business worldwide, the Territory must be so broadly defined.

Ex. A, Annex B, ¶¶1 and 2.

11.    Kurtzhals is a double professional engineer, licensed in Pennsylvania, who was substantially involved with the design and operations of e2's products, including, but not limited to, specific knowledge related to the application of e2's patented R3Di technology into the data center environment.  While employed at e2, Kurtzhals was intimately involved in integrating micro-grid technology into a large-scale data center project in Ireland.

12.    During his employment, Kurtzhals had access to e2's confidential and proprietary information trade secrets, financial information, product plans, customer lists, marketing plans and strategies, systems, manuals, forecasts and other business information, improvements, inventions, business strategies, business methods and practices, formulas, product ideas, chemical and/or mechanical processes and equipment information analysis and related products and data, computer programs and software, software designs and documentation, source codes, algorithms, techniques, schematics, know-how and data ("Proprietary Information").

13.    The Employment Agreement includes a "Proprietary Information and Inventions Agreement" signed by Kurtzhals acknowledging his access to e2's Proprietary Information.  Ex. A, Annex A.

14.    During Kurtzhals' employment with e2 he worked with e2's customers, including, but not limited to Herbata, which is one of e2's most significant customers, and also was involved in and had knowledge of e2's strategic plan for pursuing and developing other potential customers and business opportunities.

**Kurtzhals Abruptly Resigns and Now Works for a Competitor**

15.    After working for e2 for well over a year and having access to e2's Proprietary Information, on June 23, 2023, Kurtzhals abruptly resigned from his position with no advanced notice.

16.    e2 has recently learned that after abruptly resigning from e2, Kurtzhals has subsequently accepted a position with and has been working for Tecfusions, Inc. ("Tecfusions") in a similar or same engineering capacity that he did when employed by e2.

17.    Tecfusions is a Florida corporation with its principal place of business listed with the Florida Secretary of State located at 13627 Pine Villa Lane, Fort Meyers, Florida 33912, which is well within a 50-mile radius of e2's headquarters.

18.     Tecfusions is a direct competitor to e2 and promotes itself as being involved in data infrastructure security and green data centers, which are areas where e2 operates.  Tecfusions' vision is to be a world leader in sustainable and green data center design, construction and operations, which would directly compete with e2.

**Kurtzhals Misappropriates e2's Proprietary Information and Uses That Information for the Benefit of Tecfusions**

19.     e2 has recently learned that prior to resigning, while still employed by e2, Kurtzhals had numerous meetings and phone calls with individuals from Tecfusions about establishing Tecfusions' business, Kurtzhals' role at Tecfusions, misappropriating and using e2's Proprietary Information for Tecfusions benefit, soliciting e2's customers, including, but not limited to, Herbata, and soliciting e2's employees to work for Tecfusions.

20.     For example, in or around March 1, 2023, almost four months prior to abruptly resigning from e2, Kurtzhals had a meeting with individuals from Tecfusions in which he was tasked with leasing Tecfusion office space in or around "Sarasota or North (out of 50-mile range of e2)," setting up the company email and sending out Employment Agreements to potential employees, including several who were employed by e2 at the time.

21.     During that meeting, Kurtzhals and Tecfusions discussed and strategized on how to compete with e2 and ways in which they could usurp e2's

customers and business opportunities, including, but not limited to, the development of a large data center which e2 is working on for Herbata in Ireland. They specifically discussed purchasing "options" on the land where the Herbata project is located to thwart and/or take over the development of the project.

22.     Kurtzhals and Tecfusions also discussed soliciting several e2 employees, including one who recently abruptly resigned from e2.

23.     Kurtzhals and Tecfusions discussed taking and using e2's proprietary products, including the patented R3Di technology and renaming it for their own purposes.

24.     e2 has confirmed that Tecfusions has received e2 confidential and proprietary information through Kurtzhals related to e2's battery specifications and that Tecfusions is now working with two (2) vendors to duplicate e2's system. During his employment at e2, Kurtzhals had access to e2's battery specifications.

25.     In addition, during this same March 1st meeting, Kurtzhals and Tecfusions discussed Kurtzhals' non-compete provision in his Employment Agreement and an attempt to avoid it by setting up a sham office for Tecfusions outside the 50-mile radius of e2's headquarters.

26.     On numerous occasions between March and June 23, 2023, Kurtzhals participated in meetings, phone calls and emails with individuals from Tecfusions where they continued to discuss Tecfusions operations, the misappropriation and

use of e2's Proprietary Information provided by Kurtzhals and the solicitation and usurpation of e2's customers, suppliers, employees and business operations.

27.     In addition, on May 23, 2023, a month before his abrupt resignation from e2, Kurtzhals accessed confidential and proprietary "Ley Creek Drawings" from e2's computers and forwarded those drawings to his own personal email account.

28.     Forwarding confidential company information to a personal email account is strictly prohibited by e2 policies and is specifically addressed in e2's company handbook as a prohibited activity.  Kurtzhals signed e2's company handbook on March 18, 2022, acknowledging that forwarding confidential company information to a personal email account was prohibited.

29.     The "Ley Creek Drawings" related to an ongoing project that e2 is working on with a customer.

30.     The only reason for Kurtzhals to download the "Ley Creek Drawings" to his person computer was to provide that confidential and proprietary information to Tecfusions.

31.     Soon after Kurtzhals began working for Tecfusions, Tecfusions also made cosmetic changes to its website to include photos/images on its website that look identical to photos/images contained in e2's engineering report/building application for its Ireland project, which Kurtzhals had access to while at e2.

32.     While employed at Tecfusions, Kurtzhals has continued to solicit business from e2's customers and business opportunities who he solicited, negotiated, contracted, serviced or had contact with while at e2 and has also solicited e2 employees to work for Tecfusions.

33.     To date, Kurtzhals continues to work for Tecfusions.

## COUNT I

## DECLARATORY JUDGEMENT PURSUANT TO 28 U.S.C. § 2201

34.     e2 restates and realleges paragraphs 1 through 33 as though fully set forth herein as paragraph 34 of Count I.

35.     The Employment Agreement is a binding and enforceable contract between e2 and Kurtzhals.

36.     e2 is entitled to enforce the post-employment restrictions as contained in the Employment Agreement because they are supported by adequate consideration and are reasonable in terms of time period and geographical scope.

37.     In violation of the post-employment restrictions as contained in the Employment Agreement, Kurtzhals has accepted employment and continues to work for a competitor of e2 that is located within a 50-mile radius of e2's headquarters, and has solicited e2's customers, with whom he had contact while employed at e2, and employees.

38.    An actual controversy exists as to the enforceability of the post-employment restrictions contained in the Employment Agreement, e2 has a practical interest in a declaration that the post-employment restrictions are enforceable and all parties having an interest in the declaration are parties to this lawsuit.

WHEREFORE, Plaintiff, e2Companies, LLC, respectfully requests that this Court enter an Order in its favor and against Defendant, Craig Kurtzhals as follows:

    a.    Declaring that the Non-Competition Agreement, Non-Solicitation of Customer and Non-Solicitation of Employees sections contained in Annex B of the Employment Agreement to be enforceable and finding that they are supported by adequate consideration and reasonable in their time period and geographical scope;

    b.    Declaring that Kurtzhals is prohibited from continuing his employment with Tecfusions and cannot not, directly or indirectly, participate in or engage in any business or activity which is in competition with e2 in within a fifty (50) mile radius around any and all offices of e2 or offices of e2's customers globally in which e2 conducts or engages in business, whether

as an individual on his account or as an employee, consultant, contractor, officer, director, shareholder, partner, member, joint venture partner, representative, agent or equity owner of any business entity for a period of twelve (12) months;

c.    Declaring that Kurtzhals is prohibited from directly or indirectly, for any business that is in competition with e2, solicit the business of any person, firm, corporation, partnership, limited liability company, trust or other business entity which Kurtzhals solicited, negotiated, contracted, serviced or had contact with on the e2's behalf during the one (1) year period prior to the termination of Kurtzhals' employment with e2, (b) in any other manner persuade or attempt to persuade any such person, firm, corporation, partnership, limited liability Company, trust or other business entity to discontinue or alter its business relationship with company, or (c) otherwise solicit for a competitive purpose or interfere with e2's relationship with any such person, firm, corporation, partnership, limited liability company, trust or other business entity for a period of twelve (12) months;

d. Declaring that Kurtzhals is prohibited from directly or indirectly, in any manner, (a) soliciting, hiring, or offering to hire any employee or contractor of e2 while that person is employed or engaged by e2 and for three (3) months after the termination of that person's employment or engagement with e2, or (b) otherwise encourage or induce any such employee or contractor to discontinue his or her relationship with e2 for a period of twelve (12) months;

e. An award of attorneys' fees and expenses incurred in this matter in favor of e2 pursuant to Section 8 of the Employment Agreement; and

f. Such other relief as this Court deems fair and reasonable.

## COUNT II

### VIOLATION OF THE FLORIDA UNIFORM TRADE SECRETS ACT, FLA. STAT. § 688.01, *et. seq.* ("FUTSA")

39. e2 restates and realleges paragraphs 1 through 33 as though fully set forth herein as paragraph 39 of Count II.

40. At all relevant times, the FUTSA was in full force and effect.

41. Kurtzhals violated the FUTSA by misappropriating and disclosing e2's Proprietary Information to Tecfusions.

42.     Alternatively, by virtue of Kurtzhals new position with Tecfusion, and the nature of Tecfusions' business, which is in direct competition with e2, it would be impossible for him to discharge his duties without an inevitable use of, and transfer to, Tecfusions of e2's confidential and proprietary information, including, but not limited to, the "Ley Creek Drawings."

43.     The Proprietary Information that Kurtzhals has and inevitably will use will allow Kurtzhals and Tecfusions to gain a substantial unfair competitive advantage over e2.  Unless enjoined, Kurtzhals will use, or continue to use, e2's confidential and proprietary information for his and Tecfusions' benefit.

44.     The FUSA provides that this Court may enjoin the "actual or threatened" misappropriation of a trade secret.  Fla. Stat. § 688.003.

45.     e2's Proprietary Information constitutes a "trade secret" under the FUTSA.

46.     Kurtzhals' taking and disclosure of e2's Proprietary Information, including, but not limited to, the "Ley Creek Drawings." constitutes "misappropriation" of trade secrets pursuant to the FUTSA.

47.     Kurtzhals misappropriation was willful and malicious.

WHEREFORE, Plaintiff, e2Companies, LLC requests a judgment in its favor and against Defendant Craig Kurtzhals on Count II for compensatory damages in an amount in excess of $75,000 to be determined at trial; exemplary damages as

provided for under the FUTSA; costs and attorneys' fees; and any other relief this Court deems proper.

## COUNT III

## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C § 1030 ("CFAA")

48.     e2 restates and realleges paragraphs 1 through 33 as though fully set forth herein as paragraph 48 of Count III.

49.     e2's computers and servers are used in interstate commerce and are "protected computers" under the CFAA.  For example, they are connected to the internet, used to communicate with investors and contractors outside of Florida and in foreign countries, used to submit technologies for approval to the United States Patent Office, and used to create technologies to be marketed across the globe.

50.     Section 1030(a)(2)(C) of CFAA prohibits intentionally accessing a protected computer, without authorization or by exceeding authorized access, and obtaining information from a protected computer.

51.     Section 1030(a)(4) prohibits knowingly and with intent to defraud accessing a protected computer, without authorization or by exceeding authorized access, to obtain anything of value or further a fraud.

52.     Kurtzhals knowingly and with intent to defraud accessed a protected computer without authorization or exceeded authorization in order to transfer e2's

confidential and proprietary documents, including, but not limited to, the "Ley Creek Drawings," to his personal email for his own personal use and/or use by Tecfusions.

53.     Kurtzhals violation of the CFAA has caused damages to e2 of more than $5,000.

WHEREFORE, Plaintiff, e2Companies, LLC requests a judgment in its favor and against Defendant Craig Kurtzhals on Count III for damages in an amount in excess of $75,000 to be determined at trial; exemplary damages as provided for under the CFAA; costs and attorneys' fees; and any other relief this Court deems proper.

## COUNT IV

## BREACH OF CONTRACT

54.     e2 restates and realleges paragraphs 1 through 33 as though fully set forth herein as paragraph 54 of Count IV.

55.     The Employment Agreement constitutes a valid and enforceable contract.

56.     Kurtzhals has breached the Employment Agreement in at least the following respects:

   a.  Engaging in business or activity which is in competition with e2 within a 50-mile radius of e2's headquarters;

b. Soliciting business from persons, firms, corporations, partnerships, limited liability companies, trusts or other business entities which he solicited, negotiated, contracted, serviced or had contact with on e2's behalf while employed by e2 within twelve (12) months of his termination of employment with e2;

c. Persuading or attempting to persuade persons, firms, corporations, partnerships, limited liability companies, trusts or other business entities to discontinue or alter its business relationship with e2;

d. Soliciting for a competitive purpose and/or interfering with e2's relationship persons, firms, corporations, partnerships, limited liability companies, trusts or other business entities;

e. Soliciting to hire employees or contractors of e2 while that person was employed or engaged by e2 and/or otherwise encouraging or inducing e2 employees or contractors to discontinue their relationship with e2;

f. Disclosing e2's Proprietary Information to third-parties, including, but not limited to Tecfusions; and

g. Failing to return e2's Proprietary Information.

57.     As a result of Kurtzhals breaches of the Employment Agreement, e2 has suffered damages.

WHEREFORE, Plaintiff, e2Companies, LLC requests a judgment in its favor and against Defendant Craig Kurtzhals on Count IV for damages in an amount in excess of $75,000 to be determined at trial and any other relief this Court deems proper.

## COUNT V

## BREACH OF FIDUCIARY DUTY

58.     e2 restates and realleges paragraphs 1 through 33 as though fully set forth herein as paragraph 58 of Count V.

59.     As an employee of e2, Kurtzhals owed a fiduciary duty of loyalty to e2 while employed by e2.

60.     Kurtzhals breached his fiduciary duty to e2 by engaging in disloyal acts in anticipation of his future employment with Tecfusions, a competitor of e2, by, among other things, sharing and using e2's Proprietary Information, including, but not limited to, the "Ley Creek Drawings," that he obtained during his course of employment with e2 with Tecfusions and by soliciting e2's customers, employees and contractors prior to the end of his employment with e2.

61.     As a result of Kurtzhals' breaches of his fiduciary duty of loyalty, e2 has suffered damages.

WHEREFORE, Plaintiff, e2Companies, LLC requests a judgment in its favor and against Defendant Craig Kurtzhals on Count V for damages in an amount in excess of $75,000 to be determined at trial and any other relief this Court deems proper.

## COUNT VI

## INJUNCTIVE RELIEF

62.    e2 restates and realleges paragraphs 1 through 33 as though fully set forth herein as paragraph 62 of Count VI.

63.    Kurtzhals signed the Employment Agreement in consideration of his employment with e2.  The Employment Agreement is reasonable and enforceable.

64.    e2 has a legitimate business interest in having, requiring and enforcing the Employment Agreement's restrictive covenants prohibiting Kurtzhals from, directly or indirectly, participating in or engaging in any business or activity which is in competition with e2 within a fifty (50) mile radius around any and all offices of e2 or offices of e2's customers globally in which e2 conducts or engages in business, whether as an individual on his account or as an employee, consultant, contractor, officer, director, shareholder, partner, member, joint venture partner, representative, agent or equity owner of any business entity for a period of twelve (12) months.   This is because Kurtzhals had access to and

knowledge of e2's Proprietary Information that would enable Kurtzhals to unfairly compete against e2.

65.    e2 has a legitimate business interest in having, requiring and enforcing the Employment Agreement's restrictive covenants prohibiting Kurtzhals from, directly or indirectly, for any business that is in competition with e2, soliciting the business of any person, firm, corporation, partnership, limited liability company, trust or other business entity which Kurtzhals solicited, negotiated,  contracted, serviced or had contact with on the e2's behalf during the one (1) year period prior to the termination of Kurtzhals' employment with e2, (b) in any other manner persuading or attempting to persuade any such person, firm, corporation, partnership, limited liability Company, trust or other business entity to discontinue or alter its business relationship with company, or (c) otherwise soliciting for a competitive purpose or interfere with e2's relationship with any such person, firm, corporation, partnership, limited liability company, trust or other business entity for a period of twelve (12) months.  This is because Kurtzhals had knowledge about and a substantial relationship with e2's customers and potential customers and access to and knowledge of e2's Proprietary Information, all of which enable e2 to foster and maintain ongoing customer goodwill and substantial relationships with its actual and prospective customers.

66.    e2 has a legitimate business interest in having, requiring and enforcing the Employment Agreement's restrictive covenants prohibiting Kurtzhals from, directly or indirectly, in any manner, (a) soliciting, hiring, or offering to hire any employee or contractor of e2 while that person is employed or engaged by e2 and for three (3) months after the termination of that person's employment or engagement with e2, or (b) otherwise encouraging or inducing any such employee or contractor to discontinue his or her relationship with e2 for a period of twelve (12) months.  This is because e2 has a legitimate business relationship with its employees and preventing departing employees, like Kurtzhals, from soliciting his former colleagues to leave e2 for a competitor to e2.

67.    e2 has invested substantially in the development of its customers, employees, Proprietary Information and other resources.

68.    Kurtzhals acknowledged and agreed by entering into the Employment Agreement that the restrictive covenants set forth in the Employment Agreement were reasonable and necessary for the protection of e2's legitimate business interest.  Ex. A, Annex B, § 3.

69.    Kurtzhals has violated the Employment Agreement's restrictive covenants by accepting employment with Tecfusions, which is located within a 50-mile radius of e2, by, directly or indirectly, soliciting e2's customers and contractors, who Kurtzhals had contact with and access to while employed by e2,

and by, directly or indirectly, soliciting e2 employees to leave e2 for employment at e2's competitor.

70.    Kurtzhals conduct has caused and continues to cause irreparable harm to e2 for which it has no adequate remedy at law because the damages caused are difficult, if not impossible, to quantify.

71.    Kurtzhals acknowledged and agreed by entering into the Employment Agreement that any breaches, or threatened breaches, of the restrictive covenants set forth in the Employment Agreement would cause irreparable injury and that e2 would have no adequate remedy at law.  Ex. A, Annex B, § 3.

72.    Kurtzhals acknowledged and agreed by entering into the Employment Agreement that in the event of any breaches, or threatened breaches, of the restrictive covenants set forth in the Employment Agreement, e2 shall be entitled to immediate, temporary and permanent injunctive relief or other equitable relief without bond and without the necessity of showing actual money damages, subject to a hearing as soon as possible.  Id.

73.    The Employment Agreement's restrictive covenants are reasonable in scope, time and geographical area.

74.    e2 has a legitimate business interest in the protection and non-disclosure to third-parties of its Proprietary Information and trade secrets.

75.     Kurtzhals has misappropriated e2's Proprietary Information and trade secrets and disclosed that information to third-parties, namely, Tecfusions.

76.     Kurtzhals' misappropriation of e2's Proprietary Information and trade secrets has caused and continues to cause irreparable harm to e2 for which it has no adequate remedy at law because the damages caused are difficult, if not impossible, to quantify.

77.     Kurtzhals acknowledged and agreed that in the event of any breach or threatened breach of the Proprietary Information and Inventions Agreement, e2 would not have an adequate remedy at law and shall have the right to obtain injunctive relief, including without limitation specific performance.  Ex. A, Annex A, § 4.

78.     e2 has a substantial likelihood of success on the merits against Kurtzhals.

79.     e2 has a clear legal right to injunctive relief against Kurtzhals.

80.     The actual and threatened injury to e2 outweighs the harm injunctive relief would inflict on Kurtzhals.

WHEREFORE, Plaintiff, e2Companies, LLC, respectfully requests the following injunctive relief against Defendant, Craig Kurtzhals that:

> a. Prohibits Kurtzhals from continuing his employment with Tecfusions and, directly or indirectly, participating in or engaging

in any business or activity which is in competition with e2 within a fifty (50) mile radius around any and all offices of e2 or offices of e2's customers globally in which e2 conducts or engages in business, whether as an individual on his account or as an employee, consultant, contractor, officer, director, shareholder, partner, member, joint venture partner, representative, agent or equity owner of any business entity for a period of twelve (12) months;

b. Prohibits Kurtzhals from, directly or indirectly, for any business that is in competition with e2, soliciting the business of any person, firm, corporation, partnership, limited liability company, trust or other business entity which Kurtzhals solicited, negotiated, contracted, serviced or had contact with on the e2's behalf during the one (1) year period prior to the termination of Kurtzhals' employment with e2, (b) in any other manner persuading or attempting to persuade any such person, firm, corporation, partnership, limited liability Company, trust or other business entity to discontinue or alter its business relationship with company, or (c) otherwise soliciting for a competitive purpose or interfere with e2's relationship with any such person, firm,

corporation, partnership, limited liability company, trust or other business entity for a period of twelve (12) months;

c.  Prohibits Kurtzhals from, directly or indirectly, in any manner, (a) soliciting, hiring, or offering to hire any employee or contractor of e2 while that person is employed or engaged by e2 and for three (3) months after the termination of that person's employment or engagement with e2, or (b) otherwise encouraging or inducing any such employee or contractor to discontinue his or her relationship with e2 for a period of twelve (12) months;

d.  Enjoins Kurtzhals from disclosing or using any e2 Proprietary Information, including, but not limited to, the "Ley Creek Drawings."

e.  Requires Kurtzhals to return to e2 any and all Proprietary Information, including, but not limited to, the "Ley Creek Drawings," that he obtained from e2 regardless of the form or nature in which such information was obtained; and

f.  Any such other relief in law and/or equity that the Court deems fair and proper.

## <u>JURY DEMAND</u>

Plaintiff, e2Companies, LLC hereby demands trial by jury on all issues.

DATED: September 6, 2023

Respectfully submitted,

/s/ *Glen H. Waldman*
Glen H. Waldman, Esq.
Fla. Bar No. 618624
**ARMSTRONG TEASDALE LLP**
355 Alhambra Circle, Suite 1250
Coral Gables, Florida 33134
Telephone: (305) 371-8809
gwaldman@atllp.com
miamiefiling@atllp.com

*Counsel for Plaintiff*